FRANK P. ROSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54116, 63627.   Promulgated April 3, 1933.

*Charles E. Dalrymple, Esq.*, and *Edward R. Burt, Esq.*, for the petitioner.

*Arthur Carnduff, Esq.*, for the respondent.

#### OPINION.

LANSDON: The petitioner is an individual, residing at Oak Park, Illinois, where he operates as a capitalist and among other activities in line with his business buys and sells farm mortgages. The respondent has determined deficiencies against him for the years 1928 and 1929, in the respective amounts of $7,482.47 and $1,540.02. For his causes of action he avers (1) that the respondent has erroneously disallowed a deduction from income in 1928 in the amount of $109,444.33 as a loss actually sustained in that year and (2) that the alleged loss resulted in a net business loss in such year which he should be allowed to carry forward and apply against his tax liability for 1929. The two proceedings have been consolidated for hearing and report.

The facts proved at the hearing may be summarized as follows:

Some time prior to 1925 petitioner acquired farm mortgages from one Harry B. Alfree of Newton, Iowa, and paid therefor the amount of $311,750 in cash. It later developed that many of such mortgages were of doubtful value and the seller, Alfree, thereupon repurchased them from the petitioner and in settlement gave his promissory note, by the terms of which payments of $10,000 each were to be made on March 1 of the years 1927, 1928 and 1929 and the entire balance on March 1, 1930.

The note which petitioner received as set out herein was collaterally secured by the entire stock issue of a corporation to be organized for the purchase of holding and operating a business building in Newton, which was owned by Alfree but was encumbered by a mortgage in the amount of $60,000 which the said Alfree agreed to pay off and retire. In addition to the stock of such corporation, duly organized as the Newton Improvement Company, which was turned over to the petitioner and which he still holds, petitioner was assigned two insurance policies of $25,000 each on the life of Alfree which had a cash surrender value of $3,081. He still holds such assigned policies and pays the premiums thereon from his own funds. Prior to 1928 petitioner received payments on the note in question in the amount of $15,000. The rental income from the building owned by the Newton Improvement Co. is approximately $25,000 per year, which, by agreement, was to be set apart to apply to payments on the note.

As security for the payment of the $60,000 encumbrance on the building referred to above, Alfree assigned real estate mortgages to petitioner of the total face value of $98,000. Such mortgages to the extent of $33,000 turned out to be worthless and on the remainder only $35,000 has been realized and applied to the encumbrance on the building, leaving a balance of $25,000 due and unpaid at December 3, 1928.

Some time prior to 1928 Alfree had a stroke of paralysis which incapacitated him from business for more than one year. Late in the year 1928 he was indicted for embezzlement but was never tried for the offense charged. In 1928 he owned a home in Newton, worth $40,000 or $50,000, which was mortgaged in the amount of $30,000. He filed a voluntary petition in bankruptcy on December 4, 1930, and was discharged therefrom on July 21, 1931.

In 1928 the petitioner, after assuring himself of the financial and physical condition of Alfree, decided that he could make no further collections on the note, but took no steps by suit at law or otherwise to convert the collateral to his ownership. In his income tax return for such year he deducted the amount of $109,444.33 from his gross income as a business loss sustained in 1928. He arrived at the amount claimed by subtracting from $311,750 the sum of $163,223.92, $21,000, $3,081.85 and $15,000 which represented respectively the appraised value in that year of the property owned by the Newton Improvement Company, mortgages received from Alfree, cash surrender value of the assigned life insurance policies and payments theretofore received on the note, or a total of $202,305.77. Upon audit the Commissioner disallowed such deduction for the reason that, "since the taxpayer still holds various collaterals taken as security for the note and the amount of the loss is not, as yet, definately established as contemplated by Article 171 of Regulations 74."

A loss is deductible from income in the year in which it is sustained; a bad debt in the year in which it is ascertained to be worth-

▆▆▆▆▆▆▆▆▆▆ ▆▆

less. In either event deductibility as to any given year can be proved only by evidence that establishes both the fact and the date of the alleged loss or worthlessness. In this proceeding the petitioner has failed in both respects. In 1928 he still held all the collateral taken in security for the note and had taken no steps to reduce such collateral to ownership and thereby effect a closed transaction as the basis of his claim. Only a small part of the note was due in that year and there is no evidence that the corporation income set apart for that purpose was not sufficient to pay the balance due at the end of the year. It is obvious therefore that there is no basis for the claim that the entire balance due on the note was ascertained to be a worthless debt in 1928. In our opinion the petitioner has failed to show that the amount in controversy should be deducted from his income in the taxable year either as a business loss or a bad debt. *Carl Muller*, 4 B. T. A. 169; *Russo Fruit Co.*, 23 B. T. A. 1381; *R. E. Huff*, 20 B. T. A. 516. Cf. *Douglas Light & Power Co.*, 43 Fed. (2d) 904.

The deficiency for 1929 is based upon a net loss claimed in 1928 in the amount of $43,341.83. The effect of our conclusion above is that the petitioner sustained no deductible loss in 1928. It is not necessary therefore to decide whether loss was sustained in a business regularly carried on by the taxpayer.

*Decision will be entered for the respondent.*